## UNITED STATES v. RYALS.

### Criminal Action No. 16949.

District Court, N. D. Georgia,
Atlanta Division.

May 3, 1944.

See also 56 F.Supp. 772.

M. Neil Andrews, U. S. Atty., and Raymond W. Martin, Asst. U. S. Atty., both of Atlanta, Ga., for plaintiff.

Hal Lindsay, of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

In the above case, upon defendant's motion, the Court directed a verdict in his favor, accompanying such action with the following statement and opinion:

In this case it appears that the defendant, in proper manner, before his Local Board No. 1 of DeKalb County, Georgia, claimed exemption from military service on the ground that he was a regular minister of religion. A hearing was had before the Board and a finding made by it that he was not a minister and he was placed in classification IV–E as a conscientious objector. An appeal was taken to the State Board of Appeals which affirmed the Local Board's finding. A further appeal was taken to the President who reversed the findings of the lower boards and ordered him placed, as a minister of religion, in Class IV–D. This finding of the President, dated September 17, 1941, recites that:

"The record contains the usual certifications to show that the registrant had been ordained a minister of 'Jehovah God' and that he was recognized as a regular minister by a large number of followers of that sect in his community. It does not appear that the registrant's name is included on the list of 'pioneers' or members of the Bethel family issued by the Watchtower Bible and Tract Society and recognized by National Headquarters of Selective Service as evidence of ordination to the ministry as the term is used by the adherents of the Jehovah's Witnesses. There is abundant evidence in the record, however, that the registrant practices his ministry and regularly preaches to various groups of his sect.

"The evidence of record in this case is convincing that the registrant is a 'Jehovah's Witness', and that he is recognized and accepted as a minister by those toward whom he stands in the relation of a minister.

"Based upon the facts of record, the registrant is reclassified and placed in Class IV–D."

This finding was never revoked, set aside or reversed by the President or any other lawful authority, but subsequent to the President's finding, upon request of the State Director of Selective Service on August 14, 1942, the Local Board reopened the matter of defendant's classification and at a single hearing, after questioning defendant, made the following finding on August 31, 1942:

"It is the unanimous opinion of this Board, and has been since his Questionnaire was first received and considered on May 19, 1941, that this registrant is physically qualified for military duty and should be willing to serve his country the same as other men are doing, otherwise, he should be assigned to work under civilian supervision."

On said date the Board tentatively reclassified defendant as 1–A–O, and later, on September 25, 1942, reclassified him as IV—E, without, as far as this record shows, the submission of any evidence additional to that relied upon by the President in his finding on September 17, 1941, or by the Board in making its finding on September 29, 1941, or which would, if true, justify a change in defendant's classification. Pursuant to the finding of the Local Board on August 31, 1942, defendant was directed "to report to said Board for an assignment to work of national importance under civilian direction, to-wit, Buck Creek Camp located at Marion, McDowell County, in the State of North Carolina." Defendant filed an appeal to this finding to the State Board of Appeals but the latter merely entered on the minutes on the questionnaire the item, "10–8–42. Appeal Board places registrant in Class IV–subdivision E, by the following vote: 5 A's 0 No's. H. L. Barkley."

Defendant thereupon requested the State Director to again appeal his case to the Board of the President and also made a similar request to the National Headquar-

ters of the Selective Service System. The Director sent the file to the National Director "in order that he might determine whether or not he would make an appeal of (the) case to the President." On November 9, 1942, National Headquarters replied to the State Director that, "The Director of Selective Service contemplates no further action regarding this registrant's classification."

In the case of Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, the Supreme Court held that the courts could not examine into the correctness of the findings of fact of draft boards until after the selectee had been accepted by the Army. The point urged in the case was, "that the District Court had erred in refusing to permit a trial de novo on the merits of his claimed exemption." 320 U.S. at page 551, 64 S. Ct. at page 347.

The Court said: "The narrow question therefore presented by this case is whether Congress has authorized judicial review of the propriety of a board's classification in a criminal prosecution for wilful violation of an order directing a registrant to report for the last step in the selective process." 320 U.S. at page 554, 64 S.Ct. at page 349.

The present case is quite different from the Falbo case, and because of this difference, the Falbo case is not decisive here. In that case, the Local Board and appeal boards all found as a fact that Falbo was not a minister of religion and classified him as a conscientious objector. In that case the question was whether or not the courts might test the correctness of the board's finding in a de novo investigation of the facts and reverse the findings of fact prior to the selectee's acceptance in the Army.

In the case before us now these questions are not in issue, but it is a question here, not of reversing, but of giving effect to unreversed final findings of fact by the President and boards.

The President expressly found in the order of September 17, 1941, which I have quoted, that defendant was a minister and directed that he be classified as such, which was done by the Local Board on September 29, 1941.

The President's decision was final (Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194), and it certainly must be so considered until legally changed, which has not been shown in this case.

There is not a particle of evidence of any change or attempted change in findings of fact or of consideration of additional facts by the Local Board to justify a change of status. The last finding of the Local Board, upon which the order to report to a work camp was based, was as follows:

"It is the unanimous opinion of this Board, and has been since his Questionnaire was first received and considered on May 19, 1941, that this registrant is physically qualified for military duty and should be willing to serve his country the same as other men are doing, otherwise, he should be assigned to work under civilian supervision."

It will be noted, significantly, that the Board does not undertake to find that defendant was not a minister as declared by the President, or to make any new findings whatever with respect to defendant's status as a minister, or refer to any facts not considered when defendant was classified, but merely proceeds to pass upon his physical qualifications, which findings can not be reviewed on appeal. It appears, therefore, that there has been a final determination, not changed or attempted to be changed in any lawful manner, that the defendant is a minister of religion, and exempted from any kind of service under the act. The mere finding, if there had been one, that he was a conscientious objector, would not amount to a finding that he was not a minister. A man may be both a minister and a conscientious objector, but if he be a minister he is exempted from service under the terms of the Act itself, whether he be a conscientious objector or not. Indeed, upon such finding of the President, unreversed, the Local Board had no power to reclassify the defendant as a conscientious objector instead of minister, and no jurisdiction to order the defendant to report either to the Army or work camp, and that its attempt to do so is wholly ineffective and void, and defendant can not be held criminally liable for disobeying such order.

To repeat, this Court is not undertaking to try de novo a question of fact as to whether defendant is or is not a minister, nor to determine whether or not the evidence before the Board was sufficient to show a change of defendant's status since the President's finding that he was a minister. But it is undertaking to rule, independently of all evidence except that of the findings of the President and the Board themselves, that such findings, which the

Court can examine and construe, establish that the President's order was final, unreversed and exempted defendant from all service and from the duty of obeying the Local Board's order to report to a work camp, since the Board's finding itself shows that it considered no evidence which was not before the President at the time of his ruling and found no change of status of defendant, but only the same situation which it found when, in its own words, "his questionnaire was first received and considered." The finding that defendant was physically fit and should be willing to serve his country as other men were doing may have been entirely true, but was beside the mark and was not a finding that there had been a change of status or that new evidence had been presented and considered, or that he was not a minister, and was not such finding as could reverse and annul the President's finding that he was a minister and restore to the Local Board jurisdiction to order him to a work camp.

Here it is not a question of the correctness of the Board's finding, but its jurisdiction to make the order it did. In my opinion, the Court, without infringing the rule in the Falbo case, may go outside the record to determine whether the Board had such jurisdiction, but the Court has not relied upon such evidence dehors the record, though it is sufficient to show want of jurisdiction since, as above stated, the findings of the President and the Board themselves show that the Board had no jurisdiction to reopen the case unless it had before it "facts not considered when the registrant was classified which if true, would justify a change in the registrant's classification." On the other hand, the Board's finding negatived such fact.

Furthermore, the record shows that defendant was denied an appeal to the President, who might, and I think probably would, have set aside the reversal by the Board of his finding and order.

Defendant has exhausted all of his administrative remedies and is left to his only recourse in this Court to protect his civil rights.

To hold that a finding and order, void on its face, could not be attacked until after defendant had given up a responsible position, severed all family ties and reported for work, practically without compensation, would, in my opinion, be a denial of due process of law and not such holding as required by the ruling in the Falbo case. It seems to me both just and proper to entertain, in this criminal action against him, his defense, which I find to be good, of the invalidity of the Board's order. If he can not make such defense here, the penitentiary awaits him without any further opportunity to be heard. To deny it would, in my opinion, be a denial of due process of law.

This case involves fundamental principles of our Government and my action in it is taken only after a careful and troubled consideration. I fully realize the importance in furthering in every way possible measures taken for the defense of our country and to meet the military needs in wartime. I also appreciate fully the sincere and conscientious efforts of patriotic citizens who are, as members of the draft boards, devoting their time toward these ends and sympathize with them in the heavy duties and grave responsibilities they bear.

On the other hand, the courts bear also a heavy responsibility to preserve individual rights that have been recognized and fought for for hundreds of years and to harmonize the protection of such rights with the military interests of the Government in wartime. Nothing but the gravest necessity justifies the infringement of such rights.

However, in this case, I feel that these rights should be and can be protected without seriously affecting our wartime efforts.

Finding as I do, that the order which defendant is charged with violating in this case was void and that he therefore could not be legally or justly required to obey same, defendant could make such defense in this case as he has done.

In view of this finding and what I have stated at some length, I have reached the conclusion that the Government has not presented sufficient evidence in this case to submit same for your consideration and I am, therefore, sustaining defendant's motion for a directed verdict of not guilty.